Case No.  SACV 17-1938-JLS-JDE                                    Date:  February 05, 2018
Title:  James Mortley v. Express Pipe & Supply Co., et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:
    Not Present                                                                  Not Present

**PROCEEDINGS:  (IN CHAMBERS) ORDER DENYING PLAINTIFF'S MOTION TO REMAND (Doc. 14)**

    Before the Court is a Motion to Remand filed by Plaintiff James Mortley.  (Mot., Doc. 14.)  Defendants Express Pipe & Supply Co., LLC and Morrison Supply Company, LLC opposed, and Mortley replied.  (Opp., Doc. 16; Reply, Doc. 19.)  Having heard oral argument and having taken the matter under submission, the Court DENIES Mortley's Motion.

## I. BACKGROUND

    Defendants employed Plaintiff James Mortley as an hourly-paid, non-exempt employee from approximately March 2013 to December 2016 in Anaheim, California.  (Compl. ¶ 4, Doc. 1-1.)  Defendants are a plumbing parts supply and services retailer operating approximately 15 retail store and warehouse locations in California.  (*Id.* ¶ 18.)  Mortley alleges that he and other employees similarly situated were not paid for all hours worked, did not receive required meal and rest breaks, and experienced other violations of California wage and hour law. (*Id.* ¶¶ 26-38.)

    On September 26, 2017, on behalf of himself and other similarly situated employees, Mortley filed a complaint against Defendants in Orange County Superior Court.  (*See* Compl.)  Mortley alleges claims for (1) failing to pay overtime wages, Cal. Lab. Code §§ 510, 1198; (2) failing to pay minimum wages, Cal. Lab. Code §§ 1182.12, 1194, 1197, 1197.1, 1198; (3) failing to provide meal breaks, Cal. Lab. Code §§ 226.7, 512(a), 1198; (4) failing to provide rest breaks, Cal. Lab. Code § 226.7, 1198; (5)

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  SACV 17-1938-JLS-JDE                                    Date:  February 05, 2018
Title:  James Mortley v. Express Pipe & Supply Co., et al.

providing non-compliant wage statements, Cal. Lab. Code §§ 226(a), 1198; (6) failing to retain accurate and complete payroll records, Cal. Lab. Code §§ 1174(d), 1198; (7) waiting time penalties, Cal. Lab. Code §§ 201, 202, 203; (8) failing to reimburse business expenses, Cal. Lab. Code § 2802; and (9) unfair business practices, Cal. Bus. & Prof. Code § 17200, *et seq*.  (*See id.* ¶¶ 47-116.)  On November 2, 2017, Defendants removed the action to this Court.  (*See* Notice of Removal, Doc. 1.)

Specifically, Mortley alleges that Defendants "routinely and systematically understaffed their retail and warehouse locations, resulting in a lack of break coverage." (FAC ¶ 52.)  Moreover, "Defendants . . . systematically, and on a company-wide basis, did not schedule second meal periods and had no policy for permitting Plaintiff and class members to take uninterrupted second 30-minute meal periods on days that they worked in excess of 10 hours."  (*Id.* ¶ 53.)  Mortley alleges that these practices resulted in meal and rest period violations and unpaid overtime.  Mortley also asserts that "Defendants issue the same formatted wage statements to all non-exempt, hourly-paid employees in California, irrespective of their work location."  (*Id.* ¶ 23.)

Mortley now moves to remand the case to Orange County Superior Court.

## II.  **LEGAL STANDARD**

The Class Action Fairness Act vests federal courts with original diversity jurisdiction over class actions if: (1) the aggregate amount in controversy exceeds $5,000,000, (2) the proposed class consists of at least 100 class members, (3) the primary defendants are not States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief, and (4) any class member is a citizen of a state different from any defendant. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007); 28 U.S.C. § 1332(d)(1-5).  "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

Under CAFA, the burden of establishing removal jurisdiction rests with the party seeking removal. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. SACV 17-1938-JLS-JDE | Date: February 05, 2018 |
| Title: James Mortley v. Express Pipe & Supply Co., et al. | |

Although "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold[,]" a defendant must provide "[e]vidence establishing the amount [in controversy] . . . when the plaintiff contests, or the court questions, the defendant's allegation." *Dart*, 135 S. Ct. at 554. "Under this [latter] burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *see Gugliemino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (recognizing that the Ninth Circuit has applied the preponderance holding in *Sanchez* to CAFA cases).

     A defendant's preponderance burden "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal citation and quotation marks omitted). However, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

### III.    DISCUSSION

     In his Motion, Mortley argues that remand is proper because Defendants have not provided evidence to support their "arbitrary violation rates" used to calculate the amount in controversy. (Mem. at 8.)

     Because Mortley challenges Defendants' allegations as to the amount in controversy, Defendants must establish by a preponderance of the evidence that the amount exceeds $5,000,000. *See Ibarra*, 775 F.3d at 1197. In their notice of removal, Defendants calculate the amount in controversy to be $10,160,399.04. (Notice of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 17-1938-JLS-JDE                               Date:  February 05, 2018
Title:  James Mortley v. Express Pipe & Supply Co., et al.

Removal ¶ 50.)  The calculations are based on Defendant Express Pipe having 144 current nonexempt employees in California, and having employed a total of 315 nonexempt employees in California during the putative class period.  (*Id*. ¶ 30.)  Defendants allege that these class members had an average hourly rate of pay of $17.62. (*Id.*)  The calculations are also based on Defendant Morrison Supply Company, LLC having 45 current nonexempt employees in California, and having employed 70 nonexempt employees in California during the class period.  (*Id*. ¶ 31.)  These employees were calculated to have an average hourly rate of pay of $16.31.  (*Id*.)  Accordingly, Defendants made the following calculations to support the alleged amount in controversy:

- Because Plaintiff alleges that Defendants "routinely and systematically" failed to provide meal periods, Defendants calculated missed meal periods at a rate of two missed meal periods per week.  Defendants allege that this places $2,516,158.00 in controversy.  (*Id*. ¶¶ 32-33.)
- Defendants also assumed that class members missed two rest periods per week, placing an additional $2,516,158.00 in controversy.  (*Id*. ¶¶ 34-35.)
- Assuming that class members were not paid for one hour of overtime a week, which is the equivalent of two meal breaks per week, Defendants calculate the alleged unpaid overtime claims to be worth $1,877,398.43.  (*Id*. ¶¶ 36-37.)
- Defendants assume that each Plaintiff who was required to undergo mandatory drug testing at the beginning of their employment was unpaid for two hours, meaning that unpaid minimum wage allegations are worth $4,167.00.  (*Id*. ¶¶ 38-39.)
- Related to Plaintiff's allegation that class members were not reimbursed for gas or transportation to the drug testing location, Defendants assume that each class member traveled ten miles round trip, making the failure to reimburse business expense allegation worth $1,258.20.  (*Id*. ¶¶ 40-41.)
- Defendants used the number of workweeks worked in aggregate by class members during the class period to calculate wage statement violations, asserting that this allegation places $488,000.00 in controversy.  (*Id*. ¶¶ 43-44.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 17-1938-JLS-JDE                                         Date: February 05, 2018
Title: James Mortley v. Express Pipe & Supply Co., et al.

- Defendants calculated the amount in controversy for waiting time penalties based on the number of employees who separated their employment during the class period; this number of employees was multiplied by the average hourly rate of pay and the statutory maximum recovery of 30 days, placing an alleged $715,176.00 in controversy. (*Id.* ¶¶ 45-47.)
- Finally, relying on the standard twenty-five percent benchmark used for class action attorneys' fees in the Ninth Circuit, Defendants estimate attorneys' fees to be worth $2,032,079.31, or 25% of the total of the other alleged claims. (*Id.* ¶¶ 48, 50.)

The Court finds that, based on the allegations in the FAC and the declaration of Jennifer Alfaro, Chief Human Resources Officer (Doc. 17), Defendants' calculations are supported by a preponderance of the evidence. In *Ibarra*, the defendant attempted to meet the $5 million jurisdictional minimum by relying on a 100 percent violation rate. 775 F.3d at 1198. This rate was based on allegations that the defendant had a "pattern and practice of failing to pay" overtime wages and "maintain[ed] an institutionalized unwritten policy that mandates [] unlawful practices." *Id*. Upon reviewing these allegations, the Ninth Circuit held that the defendant's assumptions were unreasonable, explaining that a "'pattern and practice' of doing something does not necessarily mean always doing something." *Id.* at 1198-99. Thus, although the complaint alleged a "pattern and practice" and an "institutionalized unwritten policy mandating" labor law violations, the complaint did *not* allege that the defendant "universally, on each and every shift, violates labor laws" or that "such violations occurred in each and every shift." *Id*. at 1199. As a result, the court found that the defendant's assumptions of a 100 percent violation rate was "pulled from thin air" and "not grounded in real evidence." *Id*.

Defendants bear the burden to demonstrate that its estimated amount in controversy relies on reasonable assumptions. At the outset, Mortley argues that the calculations in Alfaro's declarations that set forth the number of class members, number of workweeks, and average rates of pay are unsubstantiated because Defendants did not explain how they determined the number of class members or workweeks, or their average rate of pay. The Court concludes that Alfaro's declaration adequately sets forth

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 17-1938-JLS-JDE                                    Date:  February 05, 2018
Title:  James Mortley v. Express Pipe & Supply Co., et al.

the basis for these figures in a reliable fashion, and concludes that the use of average rates of pay is reasonable.  *See Black v. T-Mobile USA, Inc.*, No. 17-CV-04151-HSG, 2017 WL 5257110, at *4 (N.D. Cal. Nov. 2, 2017)  (explaining that "CAFA does not require Defendant to 'conduct a fact-specific inquiry' into the schedule or exact compensation of each potential class member" (quoting *Bryan v. Wal-Mart Stores, Inc.*, No. C 08-5221 SI, 2009 WL 440485, at *3 (N.D. Cal. Feb. 23, 2009)).

As to the specific assumptions made as to each alleged claim, the Court will take each claim in turn.

### A. <u>Meal and Rest Period Violations</u>

Defendants assume that class members missed two meal periods and two rest periods each per week.  This amounts to $2,516,158.00 in controversy each for meal period and rest period violations, for a total of $5,032,316.00.  Allegations in the complaint include that Defendants "have . . . a company-wide policy and/or practice of understaffing" resulting in meal break violations.  (Compl. ¶ 66.)  Mortley alleged seventeen specific dates on which he was not permitted to take a meal period, but states that his missed meal periods were not limited to those dates.  (*Id*.)  The rest period allegations in the complaint are similarly based on a "company-wide policy and practice of understaffing," with no particular violation dates alleged.  (*Id*. ¶ 75.)  Defendants point to Mortley's allegations of routine and systematic violations to support their assumption. Defendants' review of the time records beginning in August 2014 indicate that 83,090 of 88,202 shifts have been greater than six hours long, and that the average number of shifts per employee with records is 4.85 shift per week.  (Alfaro Decl. ¶ 16.)

The Court concludes that in light of the broad language of the complaint and evidence in Alfaro's declaration, Defendants' assumptions are reasonable.  Defendants have not assumed a 100 percent violation rate.  Moreover, a number of courts have found similar assumptions reasonable in light of similar language in the complaint.  *See, e.g.*, *Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB-PLAX, 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) (finding 100 percent violation rate reasonable where plaintiff alleged meal break violations "at all material times"); *Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 17-1938-JLS-JDE                                        Date: February 05, 2018
Title: James Mortley v. Express Pipe & Supply Co., et al.

assumption of one meal and one rest break violation per week reasonable based on allegations of policy and practice of understaffing); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumption of fifty percent violation rate for meal and rest break violations based on allegations of policy and practice of nonpayment for meal periods and that class members "sometimes" did not receive all breaks). Alfaro's declaration also supports the reasonableness of the assumption; the vast majority of shifts worked by putative class members were meal- and rest-break eligible, and they worked on average nearly five shifts a week. It is therefore reasonable for Defendants to use an assumption of two meal and two rest period violations per week. Accordingly, the Court finds Defendants' assumption as to this claim reasonable and concludes that the alleged amount in controversy is supported by a preponderance of the evidence.

### B. Overtime Violations

To calculate the amount in controversy for overtime claims, Defendants assume that each class member worked one unpaid hour of overtime each week. They make this assumption based on allegations of "routine and systematic" understaffing resulting in "off-the-clock work performed during unpaid meal periods." (FAC ¶¶ 52, 54.) Further, Alfaro declared that putative class members worked an average of 4.85 shifts per week, with an average shift length of 8.4 hours for Express employees and 9.9 hours for Morrison employees, between August 2014 and October 2017. (Alfaro Decl. ¶¶ 16, 17.) The Court agrees with the courts in this circuit that have concluded that an assumption of one hour of overtime per week is reasonable when a plaintiff alleges a pattern or practice of violation. *See, e.g.*, *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding assumption of one hour of overtime per week per class member reasonable based on allegation of "regular or consistent practice"). And the evidence put forth related to average shift length and number of shifts per week supports the reasonableness of the assumption. Accordingly, the Court credits Defendants' assumption that these allegations place $1,877,398.43 in controversy.

### C. Wage Statement Penalties

_____
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 17-1938-JLS-JDE                                Date:  February 05, 2018
Title:  James Mortley v. Express Pipe & Supply Co., et al.
_____

Defendants assume a 100 percent violation rate for Mortley's wage statement violations.  Specifically, Defendants calculated a total of $488,000 placed in controversy, based on number of pay periods, number of employees, and attendant statutory penalties.  Defendants' use of a 100 percent violation rate is both reasonable and directly based on the language of the complaint.  Mortley asserted that all class members received the same standard wage statements and that they were provided "with uniform, incomplete, and inaccurate wage statements."  (FAC ¶¶ 23, 81.)  These allegations make the use of a 100 percent violation rate reasonable and well-supported, and the Court credits the assumption as to the amount placed in controversy by this claim.

### D.  Waiting Time Penalties

Defendants also use a 100 percent violation rate to calculate waiting time penalties, assuming that each class member who was separated during the relevant class period would claim a full thirty days of wages.  Mortley asserts that the allegations in the complaint do not support this extrapolation, because Mortley himself alleged that he received his final paycheck the day after he separated employment.  (Reply at 17.)  As Defendants' counsel pointed out at the hearing, however, waiting time penalties also accrue based on unpaid overtime, unpaid minimum wage, and unpaid meal and rest break claims.  *See* Cal. Labor Code § 203 (attaching penalties for payment of "any wages").  The Court concludes that the use of maximum statutory penalties was reasonable and supported based on class-wide allegations in the complaint.  In particular, Mortley alleges the employees were not paid for the time they spent engaging in "mandatory" drug testing that was required "as a condition of employment."  (FAC ¶ 59.)  This claim alone would entitle each class member who separated employment to full waiting-time penalties.  Accordingly, the Court credits Defendants' calculation of the amount in controversy as to this claim, $715,176.00

### E.  Conclusion as to Amount in Controversy

Based on its conclusion that Defendants made reasonable assumptions about violation rates in calculating meal and rest period violations, unpaid overtime, wage statement penalties, and waiting time penalties, the Court agrees that the amount in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 17-1938-JLS-JDE | Date: February 05, 2018 |
| Title: James Mortley v. Express Pipe & Supply Co., et al. | |

controversy requirement of $5 million has been more than met; Defendants' calculations for these claims add up to $6,235,492, and the Court has jurisdiction pursuant to CAFA. The Court does not reach whether the other claims are adequately supported or whether the assumptions are reasonable.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Mortley's Motion to Remand is DENIED.

Initials of Preparer: tg