1  Raul Perez (SBN 174687)
   Raul.Perez@capstonelawyers.com
2  Arnab Banerjee (SBN 252618)
   Arnab.Banerjee@capstonelawyers.com
3  Brandon Brouillette (SBN 273156)
   Brandon.Brouillette@capstonelawyers.com
4  Ruhandy Glezakos (SBN 307473)
   Ruhandy.Glezakos@capstonelawyers.com
5  Capstone Law APC
   1875 Century Park East, Suite 1000
6  Los Angeles, California 90067
   Telephone:    (310) 556-4811
7  Facsimile:    (310) 943-0396

8  Attorneys for Plaintiff James Mortley

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  JAMES MORTLEY, individually, and          Case No.:  8:17-cv-01938-JLS-JDE
    on behalf of other members of the
13  general public similarly situated,        Honorable Josephine L. Staton

14           Plaintiff,                        **NOTICE OF MOTION AND MOTION
                                               FOR PRELIMINARY APPROVAL OF
15      vs.                                    CLASS ACTION SETTLEMENT;
                                               MEMORANDUM OF POINTS AND
16  EXPRESS PIPE & SUPPLY CO., LLC,            AUTHORITIES IN SUPPORT**
    a Delaware limited liability company;
17  MORRISON SUPPLY COMPANY,                   Date:     October 19, 2018
    LLC, a Texas limited liability company;   Time:     2:30 p.m.
18  and DOES 1 through 10, inclusive,          Place:    Courtroom 10A

19           Defendants.

20

21

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 19, 2018 at 2:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 10A of the above-captioned court, located at 411 W. Fourth St., Santa Ana, CA, 92701, Courtroom 10A, 10th Floor, the Honorable Josephine L. Staton presiding, Plaintiff James Mortley will, and hereby does, move this Court to:

1.     Preliminarily approve the settlement described in the Joint Stipulation of Class Action Settlement and Release, attached as Exhibit 1 to the Declaration of Raul Perez;

2.     Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

3.     Appoint Rust Consulting, Inc. as the Settlement Administrator; and

4.     Set a hearing date for final approval of the settlement.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Raul Perez; (4) the Joint Stipulation of Class Action Settlement and Release; (5) the Notice of Class Action Settlement; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

This motion is unopposed by Defendants Express Pipe & Supply Co., LLC, Morrison Supply Company, LLC, and Morsco Supply, LLC.

1    Dated:  August 30, 2018                    Respectfully submitted,

2                                               CAPSTONE LAW APC

3                                         By: /s/ Raul Perez
                                              Raul Perez
4                                             Arnab Banerjee
                                              Brandon Brouillette
5                                             Ruhandy Glezakos

6                                             Attorneys for Plaintiff James Mortley

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.   INTRODUCTION...................................................................................1

II.  FACTS AND PROCEDURE..................................................................3

   A.   Overview of the Litigation ...........................................................3

   B.   The Parties Settled After Mediation ............................................4

   C.   The Proposed Settlement Fully Resolves Plaintiff's Claims ...........4

        1.   Composition of the Settlement Class..................................4

        2.   Settlement Consideration...................................................4

        3.   Formula for Calculating Settlement Payments...................5

        4.   Release by the Settlement Class.......................................7

III. ARGUMENT ........................................................................................7

   A.   Conditional Class Certification Is Appropriate for Settlement Purposes...........7

   B.   Plaintiff's Claims Present Predominant Questions of Law and Fact ................8

        1.   Common Questions Of Law Or Fact Predominate As to Plaintiff's
             Meal Period Claim .........................................................9

        2.   Common Questions Of Law Or Fact Predominate As to Plaintiff's
             Rest Period Claim........................................................10

        3.   Common Questions Of Law And Fact Predominate As to
             Plaintiff's Minimum Wage Claim................................12

        4.   Common Questions Of Law And Fact Predominate As to
             Plaintiff's Wage Statement Claim.............................13

        5.   Plaintiff Will Adequately Represent the Interests of the Proposed
             Settlement Class ........................................................14

        6.   Class Settlement Is Superior to Other Available Means of
             Resolution ...............................................................14

   C.   The Proposed Class Action Settlement Should Receive Preliminary
        Approval ..................................................................................15

1        1.    The Court's Scrutiny of the Proposed Settlement Is Lowered At

2              the Preliminary Approval Stage ................................................................. 15

3        2.    The Proposed Class Action Settlement Is Procedurally Fair,

4              Adequate, and Reasonable ......................................................................... 17

5              (a)    The Settlement Is The Product of Arms'-Length

6                     Negotiations And Is Therefore Entitled to a Presumption of

7                     Fairness ........................................................................................... 17

8              (b)    There Are No Obvious Deficiencies With the Settlement Or

9                     Preferential Treatment of Certain Class Members ........................ 18

10             (c)    The Parties Conducted a Thorough Investigation of the

11                    Factual and Legal Issues ............................................................... 18

12       3.    The Proposed Settlement Is Substantively Within the Range of

13             Reasonableness ........................................................................................... 19

14    D.    The Court Should Preliminarily Approve the Negotiated Class

15          Representative Enhancement Payment ................................................................ 22

16    E.    The Court Should Preliminarily Approve the Negotiated Attorneys'

17          Fees and Costs ...................................................................................................... 23

18    F.    The Proposed Class Notice Adequately Informs Class Members About

19          The Case And Proposed Settlement ..................................................................... 24

20  IV.  CONCLUSION ............................................................................................................... 26

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alonzo v. Maximus, Inc.*, 275 F.R.D. 513 (C.D. Cal. 2011) ................................. 8

*Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007) ............................. 20

*Brown v. Fed. Express Corp.,* 249 F.R.D. 580 (C.D. Cal. 2008) ..................................... 20

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................... 16

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ............................................ 17

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d
732 (1974) ............................................................................................... 24, 25

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ................................................ 16

*Frlekin v. Apple, Inc.*, 2015 WL 6851424 (N.D. Cal. Nov. 7, 2015) .......................... 13

*Gonzalez v. Officemax N. Am.*, 2012 WL 5473764 (C.D. Cal. Nov. 5, 2012) ................ 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................... 14, 15, 16

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),
2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ............................................ 17

*In re AutoZone, Inc.*, 289 F.R.D. 526 (N.D. Cal. 2012) ........................................ 8

*In re Taco Bell Wage & Hour Actions*, 2012 U.S. Dist. LEXIS 168219
(E.D. Cal. 2012) ...................................................................................... 8

*Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) .................... 20

*Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) ........................................ 8

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008) ............................................ 20

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) .............................................. 8

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ....................... 23

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ....................... 19

*Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist. LEXIS 7868 (C.D. Cal. Jan.
17, 2013) ....................................................................................................... 20

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ............................................ 19

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).............................23

*Wal-Mart Stores, Inc. v. Dukes,*131 S. Ct. 2541 (2011)......................................8

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010)..............15

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)...............7

### STATE CASES

*Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385 (2001) .....................10

*Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ...............................9

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008).........................................24

*Cicairos v. Summit Logistics*, Inc., 133 Cal. App. 4th 949 (2005).....................9

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000)................................23

*Murphy v. Kenneth Cole Prods., Inc*., 40 Cal. 4th 1094 (2007).........................9

*Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319 (2004) ......................10

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ...............................................................23

### FEDERAL STATUTES

Fed. R. Civ. P. 23 .................................................................................................15

Fed. R. Civ. P. 23(a) ........................................................................................7, 14

Fed. R. Civ. P. 23(a)(2) ........................................................................................8

Fed. R. Civ. P. 23(a)(4) ......................................................................................14

Fed. R. Civ. P. 23(b) ............................................................................................7

Fed. R. Civ. P. 23(b)(3) ....................................................................................7, 8

Fed. R. Civ. P. 23(c)(2) ................................................................................. 24, 25

Fed. R. Civ. P. 23(e)(1)(A).................................................................................15

### SECONDARY AUTHORITIES

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002)........................16

Manual for Complex Litigation (4th ed. 2004)............................................ 16, 25

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995)..................................25

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action*

    *Settlements:  An Empirical Study*, J. of Empirical Legal Studies, Vol. 1,

    Issue 1, March 2004..........................................................................................24

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff James Mortley seeks preliminary approval of the Joint Stipulation of Class Action Settlement and Release,[1] which if approved, would provide valuable monetary relief for approximately 450 current and former employees of Defendants Express Pipe & Supply Co., LLC, Morrison Supply Company, LLC, and Morsco Supply, LLC (collectively, "Defendants" or "Express Pipe") (collectively with Plaintiff, the "Parties").

The basic terms of the Settlement provide for the following:

(1)  Conditional certification of a Settlement Class defined as:  All persons who have worked for Defendants as non-exempt, hourly-paid employees in California, including retail and warehouse locations, at any time from September 26, 2013 through the date of Preliminary Approval.

(2)  A **non-reversionary** Class Settlement Amount of $1,000,000. The Class Settlement Amount includes:

    (a)  A Net Settlement Amount of approximately $591,666 (the Class Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, the PAGA Settlement Payment, and the requested Class Representative Enhancement Payment) and a  PAGA Fund[2] of $7,500, which will be allocated to all Participating Class Members and PAGA Employees on a pro-rata basis according to the number of weeks that each Class Member and PAGA Employee worked during the Class Period and PAGA

---

[1] Hereinafter "Settlement Agreement" or "Settlement." Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

[2] The PAGA Fund will be allocated on a pro-rata basis to all all persons who have worked for Defendants as non-exempt, hourly-paid employees in California, including retail and warehouse locations, at any time from September 26, 2016 through the date of Preliminary Approval ("PAGA Employees").

1   Period. **Because the Class Settlement Amount is non-**
2   **reversionary, 100% of the Net Settlement Amount will be paid**
3   **to all Participating Class Members, and 100% of the PAGA**
4   **Fund will be paid to all PAGA Employees, and without the**
5   **need to submit claims for payment.**

6   (b)   Attorneys' fees not to exceed one-third of the Class Settlement
7         Amount (or $333,334) and litigation costs and expenses not to
8         exceed $20,000, to Capstone Law APC ("Plaintiff's Counsel").

9   (c)   Settlement Administration Costs, currently estimated at $15,000, to
10        be paid to the jointly selected settlement administrator, Rust
11        Consulting, Inc.

12  (d)   A Class Representative Enhancement Payment of $10,000 to James
13        Mortley for his service on behalf of the Settlement Class and for
14        agreeing to a broader release than those required of other Class
15        Members.

16  An objective evaluation of the Settlement confirms that the relief negotiated on
17  the Class' behalf is fair, reasonable, and valuable. The Settlement was negotiated by the
18  Parties at arm's length with helpful guidance from the Honorable Michael D. Marcus
19  (Ret.), an experienced and well-respected class action mediator, and the Settlement
20  confers substantial benefits to Class Members and PAGA Employees. The relief offered
21  by the Settlement to Class Members and PAGA Employees—**averaging**
22  **approximately $1,330**—is particularly impressive when viewed against the difficulties
23  encountered by plaintiffs pursuing wage and hour cases. Indeed, by settling now rather
24  than proceeding to trial, Class Members and PAGA Employees will not have to wait
25  (possibly years) for relief, nor will they have to bear the risk of class certification being
26  denied or of Defendants prevailing at trial.

27  As discussed below, the proposed Settlement satisfies all criteria for preliminary
28  settlement approval under federal law and falls within the range of reasonableness.

Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement.

## II.     FACTS AND PROCEDURE

### A.     Overview of the Litigation

Express Pipe is a plumbing supply and services retailer operating approximately 14 "Express Pipe" locations in California.  Plaintiff James Mortley worked for Express Pipe as an hourly, non-exempt employee from approximately March 2013 to December 2016 at its warehouse location at Anaheim, California.  Mr. Mortley began working as a nighttime Warehouse Associate, then worked as a swing shift Warehouse Associate, and eventually worked at the customer service counter.

On September 26, 2017, Mr. Mortley filed a class action complaint against Express Pipe in Orange County Superior Court, seeking to bring claims on behalf of non-exempt, hourly-paid employees in California, including employees working at retail and warehouse locations, within four years prior to the filing of the complaint until the date of trial. (Declaration of Raul Perez ["Perez Decl."] ¶ 2.)

The complaint asserted claims against Express Pipe for violations of the following Labor Code sections: (1) 510 and 1198 (unpaid overtime); (2)  1194, 1197, and 1197.1 (unpaid minimum wages); (3) 226.7 and 512(a) (failure to provide meal periods); (4) 226.7 (failure to provide rest periods); (5) 226(a), 1174(d), and 1198 (failure to provide compliant wage statements and maintain accurate payroll records); (6) 201 and 202 (wages not timely paid upon termination); (7) 2802  (unreimbursed business expenses); (8) California Business & Professions Code sections 17200, *et seq* (Unlawful Business Practices); and (9) California Business & Professions Code sections 17200, *et seq* (Unfair Business Practices). (Perez Decl. ¶ 3.)

On November 2, 2017, Express Pipe removed the case to the United States District Court, Central District of California.  Thereafter, the parties participated in both formal and informal discovery.  After, Plaintiff's deposition the parties began discussing mediation, and agreed to focus on the discovery necessary for mediation. Pursuant to

1  that agreement, Express Pipe agreed to produce all pertinent policy documents, and a

2  20% sample of payroll and timekeeping data, which Plaintiff's expert analyzed in

3  advance of mediation. (Perez Decl. ¶ 4.)

4       **B.    The Parties Settled After Mediation**

5       On June 27, 2018, the Parties participated in a full day of mediation with the

6  Michael D. Marcus (Ret.), an experienced mediator of wage and hour class actions.

7  Judge Marcus helped to manage the Parties' expectations and provided a useful, neutral

8  analysis of the issues and risks to both sides.  With Judge Marcus' guidance, the Parties

9  were able to negotiate a complete settlement of Plaintiff's claims.  The terms of the

10 settlement are now set forth in complete and final form in the Joint Stipulation of Class

11 Action Settlement and Release (Perez Decl., Ex. 1).  At all times, the Parties'

12 negotiations were adversarial and non-collusive.  The Settlement therefore constitutes a

13 fair, adequate, and reasonable compromise of the claims at issue. (Perez Decl. ¶ 5.)

14      **C.    The Proposed Settlement Fully Resolves Plaintiff's Claims**

15           **1.    Composition of the Settlement Class**

16      The Settlement Class consists all persons who have worked for Defendants as

17 non-exempt, hourly-paid employees in California, including retail and warehouse

18 locations, at any time from September 26, 2013 through the date of Preliminary

19 Approval. (Settlement Agreement ¶ 5.)

20           **2.    Settlement Consideration**

21      Plaintiff and Defendants have agreed to settle all class claims and representative

22 claims alleged in the action in exchange for the Class Settlement Amount of $1,000,000.

23 The Class Settlement Amount includes: (1) Individual Settlement Payments; (2)

24 $333,334 in attorneys' fees and up to $20,000 in litigation costs/expenses to Plaintiff's

25 Counsel; (3) a PAGA Settlement Payment of $30,000, of which 75% ($22,500) will be

26 paid to the LWDA, and 25% ($7,500) will be distributed to PAGA Employees; (4)

27 Settlement Administration Costs of approximately $15,000; and (5) a Class

28 Representative Enhancement Payment of $10,000 to Plaintiff James Mortley for his

service on behalf of the Settlement Class and for a general release of all claims arising out of his employment. (Settlement Agreement ¶¶ 2, 7-8, 14, 28.)

Subject to the Court approving Attorneys' Fees and Costs, the PAGA Settlement Payment, Settlement Administration Costs, and the Class Representative Enhancement Payment, the Net Settlement Amount will be distributed to all Participating Class Members and the PAGA Fund will be distributed to all PAGA Employees. Because the Class Settlement Amount is non-reversionary, 100% of the Net Settlement Amount/PAGA Fund will be distributed to Class Members/PAGA Employees, and without the need to submit claims for payment. (*Id.* at ¶¶ 15, 37-38.)

### 3.    Formula for Calculating Settlement Payments

Individual Settlement Payments will be calculated and apportioned from the Net Settlement Amount and PAGA Fund based on the number of Workweeks that Participating Class Members and PAGA Employees worked during the Class Period and PAGA Period. (Settlement Agreement ¶ 38.) Specific calculations of Individual Settlement Payments will be made as follows:

**Payments from Net Settlement Amount**. The Settlement Administrator will calculate the total number of Workweeks worked by each Class Member during the Class Period and the aggregate total number of Workweeks worked by all Class Members during the Class Period. To determine each Class Member's estimated share of the Net Settlement Amount, the Settlement Administrator will use the following formula:  The Net Settlement Amount will be divided by the aggregate total number of Workweeks, resulting in the "Workweek Value."  Each Class Member's share of the Net Settlement Amount will be calculated by multiplying each individual Class Member's total number of Workweeks by the Workweek Value. The Individual Settlement Payment will be reduced by any required deductions for each Class Members as specifically set forth herein, including employee-side tax withholdings or deductions. Former employees will be allocated an additional six weeks to compensate them for the claim for waiting time penalties. The entire Net Settlement Amount will be disbursed to

all Class Members who do not submit timely and valid Requests for Exclusion. If there are any valid and timely Requests for Exclusion, the Settlement Administrator shall proportionately increase each Participating Class Member's share of the Net Settlement Amount according to the number of Workweeks worked, so that the amount actually distributed to the Settlement Class equals 100% of the Net Settlement Amount.

**Payments from PAGA Fund**. The Settlement Administrator will calculate the total number of Workweeks worked by each PAGA Employee during the PAGA Period and the aggregate total number of Workweeks worked by all PAGA Employees during the PAGA Period. To determine each PAGA Employee's estimated share of the PAGA Fund, the Settlement Administrator will use the following formula: The PAGA Fund will be divided by the aggregate total number of Workweeks, resulting in the "PAGA Workweek Value." Each PAGA Employee's share of the PAGA Fund will be calculated by multiplying each individual Participating PAGA Employee's total number of Workweeks by the PAGA Workweek Value. A Request for Exclusion does not exclude a PAGA Employee from the release of claims under California Labor Code §§ 2698, *et seq.* and the PAGA Employee will receive their portion of the PAGA fund even if he or she submits a valid Request for Exclusion.

The average Individual Settlement Payment (i.e., the average payment from the Net Settlement Amount and PAGA Fund, combined) is approximately **$1,330**. This average recovery is significantly higher than many wage and hour class action settlements approved by California state and federal courts. *See*, *e.g.*, *Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No.

BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

### 4.    Release by the Settlement Class

In exchange for the Class Settlement Amount, Plaintiff, Participating Class Members, and PAGA Employees will agree to release the Released Parties for the Released Claims, which are defined as:

> All claims, rights, demands, liabilities, and causes of action, arising from, or related to, the same set of operative facts as those set forth in the operative complaint during the Class Period, including: (a) all claims for unpaid overtime; (b) all claims for meal and rest break violations; (c) all claims for unpaid minimum wages; (d) all claims for the failure to timely pay wages upon termination; (e) all claims for the failure to timely pay wages during employment; (f) all claims for wage statement violations; and (g) all claims asserted through California Business & Professions Code §§ 17200, et seq., and California Labor Code §§ 2698, et seq. based on the preceding claims.

(Settlement Agreement ¶ 24.)

## III.    ARGUMENT

### A.    Conditional Class Certification Is Appropriate for Settlement Purposes

The parties seek conditional certification of the Settlement Class. A party seeking to certify a class must demonstrate that it has met all four requirements under Federal Rule of Civil Procedure 23(a),[3] and at least one of the requirements of Rule 23(b)—in this case, Rule 23(b)(3). *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th

---

[3] Rule 23(a) provides that, to certify a class, Plaintiff must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Cir. 2001). Where, as here, workplace violations are at issue, "the key question for class certification is whether there is a consistent employer practice [or policy] that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008). Class certification is proper when the plaintiff provides substantial evidence of a company-wide policy on which his theory of liability is based, even if in practice that policy's implementation varied. *See In re Taco Bell Wage & Hour Actions*, No. 07-01314-SAB, 2012 U.S. Dist. LEXIS 168219, at *19 (E.D. Cal. Nov. 27, 2012) (certifying meal period class where uniform policy was undisputed but defendant argued "as a matter of practice, the policy is carried out in a variety of ways") (*adopted in full*, 2013 U.S. Dist. LEXIS 380 (E.D. Cal. Jan. 2, 2013)).

Moreover, "it is the plaintiff's theory that matters at the class certification stage, not whether the theory will ultimately succeed on the merits." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 525 (C.D. Cal. 2011) (citations omitted). Rule 23's commonality analysis depends on whether a "basic theory of the [plaintiffs'] case" "can be proved on a classwide basis." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359, 131 S. Ct. 2541 (2011). However, the fact that class members may have been affected by a defendant's uniform policies/practices to varying degrees or have suffered varying damages *is not a bar* to certification. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th. Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

### B.    Plaintiff's Claims Present Predominant Questions of Law and Fact

For a class to be certified, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Rule 23(b)(3) also requires that the common questions of law or fact predominate over any individual questions. Thus, the Rule 23(a)(2) commonality inquiry and the Rule 23(b)(3) predominance inquiry overlap. *See In re Autozone, Inc.*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012). Here, each of Plaintiff's theories of liability presents common legal and factual questions that predominate over any individual issues.

1        **1.        Common Questions Of Law Or Fact Predominate As to**

2                    **Plaintiff's Meal Period Claim**

3        "An employer may not employ an employee for a work period of more than five

4    hours per day without providing the employee with a meal period of not less than 30

5    minutes." Cal. Lab. Code § 512(a). Additionally, an employee may not work more than

6    10 hours without being provided a second meal period. *Id.* Where an employee does not

7    receive a timely meal period of at least 30 minutes, the employer is required to pay the

8    employee one additional hour of pay at the employee's regular rate of compensation.

9    Cal. Lab. Code § 226.7(b).

10       Plaintiff alleges that Class Members routinely had their meal periods delayed

11   and/or interrupted due to periods of heavy workload that required employees to postpone

12   taking their meal periods until after the fifth hour of work, and on occasion return to

13   work during meal periods while off the clock. Plaintiff alleges that this was attributable

14   to understaffing, which did not allow proper break coverage for employees to take their

15   breaks, and shipping/delivery deadlines that were prioritized over employee meal breaks.

16       It is well-settled that an employer is liable for failing to provide meal periods if

17   the employer in any way discouraged employees from taking their required meal

18   periods.  As the California Supreme Court held in *Brinker, Ct.*, 53 Cal. 4th at 1040:

19               An employer's duty with respect to meal breaks under both section 512,
20               subdivision (a) and Wage Order No. [7] is an obligation to provide a meal
                 period to its employees. The employer satisfies this obligation if it relieves
21               its employees of all duty, relinquishes control over their activities and
                 permits them a reasonable opportunity to take an uninterrupted 30-minute
22               break, and **does not impede or discourage them from doing so.**

23   (emphasis added); *see also Cicairos v. Summit Logistics*, Inc., 133 Cal. App. 4th 949,

24   962-63 (2005); *Murphy v. Kenneth Cole Prods., Inc*., 40 Cal. 4th 1094, 1104 (2007)

25   ("An employee forced to forgo his or her meal period ... loses a benefit to which the law

26   entitles him or her.")

27       Plaintiff contends that his meal period claim under this theory is readily

28   certifiable.  Even before *Brinker,* class certification rules were not as demanding as

employers typically represent.  "Predominance is a comparative concept,' and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.' [Citations.]" *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 334 (2004) ("*Sav-On*") (citation omitted).  Thus, "[a] class action can be maintained even if each class member must at some point individually show his or her eligibility for recovery or the amount of his or her damages, so long as each class member would not be required to litigate substantial and numerous factually unique questions to determine his or her individual right to recover." *Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385, 397 (2001), fn. omitted.

Accordingly, Plaintiff contends that his meal period theory of liability yields the following predominant, common questions of fact and law:

- Did Defendants maintain and implement a uniform meal period policy that, *in practice*, did not provide meal periods?
- Did Defendants fail to pay premiums whenever they failed to provide meal periods?

Plaintiff maintains that common evidence—in the form of Defendant's written policies, corporate representative testimony, and class member declarations—would answer the predominant common questions and would show that the combined effect of Defendants' meal period policies was that it did not provide Class Members to take compliant breaks.

### 2.    Common Questions Of Law Or Fact Predominate As to Plaintiff's Rest Period Claim

Under the IWC Wage Orders, an employer is required to authorize and permit all employees to take duty free rest periods at the rate of at least 10 minutes for every four hours worked or major fraction thereof. 8 Cal. Code Regs. § 11020 (12). When an employer fails to provide an employee a paid rest period in accordance with the Wage Order, that employer shall pay the employee one hour of pay at the employee's regular rate of pay for each work day that the rest period is not provided. 8 Cal. Code of Reg. §

1   11020(12)(B); Cal. Lab. Code § 226.7(b).

2        Plaintiff alleges that Express Pipe unlawfully prohibits employees from leaving

3   its premises during their rest periods. Thus, Express Pipe allegedly violates the

4   requirements of Wage Order 5 and the Labor Code by not allowing employees to use

5   their rest breaks for their own purposes because they are prohibited from leaving the

6   premises during their rest breaks.

7        Recently the California Supreme confirmed that an employer is required to

8   relieve an employee of all duties during rest breaks. *Augustus v. ABM Security Services,*

9   *Inc.*, 2 Cal. 5th 257 (2016) ("[D]uring rest periods employers must relieve employees of

10  all duties and relinquish control over how employees spend their time.")

11       It is well established that an employer cannot require employees to remain on the

12  premises during meal period. *See Bono Enterprises, In. v. Bradshaw*, 32 Cal. App. 4th

13  968 (1995). The Supreme Court has confirmed that the same is true for rest breaks:

14       It would be difficult to cast aside section 226.7's parallel treatment of meal
15       periods and rest periods and conclude that employers had completely
         distinct obligations when providing meal and rest periods. What makes
16       sense instead is to infer that employers' responsibility are the same for meal
         and rest periods— an inference that also reflects the protective purpose of
17       both. Augustus, slip op. at 9.

18  Indeed, the Supreme Court specifically found that on-duty rest periods in which the

19  employer can require employees to remain on the premises is permitted "only in starkly

20  limited circumstances." *Id.* at 12.

21       Plaintiff contends that common questions predominate as to Plaintiff's rest period

22  claim because Defendants' rest period policy creates the following class-wide issues:

23      • Whether Defendants violate California law by failing to permit Class

24       Members from leaving its premises during their rest periods;

25      • Whether Defendants' uniform written rest period policy violates California

26       law by failing to give full effect to Wage Order No. 5; and

27      • Whether Defendants were required to pay Class Members premium

28       compensation for prohibiting them from leaving its premises during their rest

1    periods.

2         Accordingly, the Court should find that common issues of fact and law

3    predominate as to the rest period claim.

4              **3.      Common Questions Of Law And Fact Predominate As to**

5                          **Plaintiff's Minimum Wage Claim**

6         California law defines "hours worked" as "the time during which an employee is

7    subject to the control of an employer, and includes all the time the employee is suffered

8    or permitted to work, whether or not required to do so." *Morillion,* 22 Cal. 4th at 578 5

9    Thus, "an employee who is subject to an employer's control does not have to be working

10   during that time to be compensated." *Morillion*, 22 Cal. 4th at 582; *see also* 8 Cal. Code

11   Regs. § 11070 subd. 2(g) (defining "hours worked" as the "time during which an

12   employee is subject to the control of an employer, and includes all the time the employee

13   is suffered or permitted to work, whether or not required to do so."). Requiring

14   employees to work without compensation violates California's minimum wage and

15   overtime laws. *See* Cal. Lab. Code §§ 510, 1194, 1197, 1197.1 and 1198. An employer

16   is liable for off-the-clock "hours worked" if it "knew or should have known off-the-

17   clock work was occurring." *Brinker*, 53 Cal. 4th at 1051-52.

18        Plaintiff alleges that he and other Class Members were required to undergo

19   multiple drug and medical tests during their employment off-the-clock and without

20   compensation in clear violation of California law.

21        The United States Department of Labor has weighed in on the issue and advises

22   as follows:

23        After being hired, employers often require their employees to take certain
          tests **as they begin employment**… such as … drug testing. Whenever you
24        impose special tests, requirements or conditions that your employee must
          meet, time he or she spends traveling to and from the tests, waiting for and
25        undergoing these tests, or meeting the requirements is probably hours
          worked.

26

27   The Department of Labor explains that "[t]ime spent in these activities is time during

28   which the employee's freedom of movement is restricted for the purpose of serving your

1  business and during which he or she is subject to your discretion and control."

2       Plaintiff contends that he has common evidence of Express Pipe's control over

3  the Class Members during the testing processes. One court described this issue as

4  dispositive. *Frlekin v. Apple, Inc.*, 2015 WL 6851424, *5-6 (N.D. Cal. Nov. 7, 2015)

5  (explaining that, the courts in *Sullivan* and *Betancourt* "both explicitly described the

6  interviews as required") (emphasis in original).

### 4.    Common Questions Of Law And Fact Predominate As to
### Plaintiff's Wage Statement Claim

9      Labor Code section 226(a) provides, in pertinent part, that an employer must

10  provide an "accurate itemized" wage statement showing net and gross wages earned.

11  Cal. Lab. Code § 226(a). "[A]n employee has a statutory right to an accurate pay stub."

12  *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010) ("*Jaimez*"); *see also*

13  *Kisliuk v. ADT Sec. Servs.*, 263 F.R.D. 544, 548 (C.D. Cal. 2008). "The purpose of the

14  wage statement requirement is to provide transparency as to the calculation of wages. A

15  complying wage statement accurately reports most of the information necessary for an

16  employee to verify if he or she is being properly paid in accordance with the law and that

17  deductions from wages are proper." DLSE Opinion Letter 2006.07.06 at 2. One of the

18  requirements for a legally compliant wage statement is that it includes "the name and

19  address of the legal entity that is the employer." Labor Code § 226(a)(8) (emphasis

20  added).

21      Plaintiff alleges that Express Pipe issued wage statements which failed to include

22  the legal name of the employer as required by Labor Code section 226(a)(8)—instead

23  the wage statement issued incorrectly state "Anaheim" (i.e. location of the warehouse)

24  where the company name should be.

25      Plaintiff contends that whether Defendants' wage statements were properly

26  formatted is an inherently common, certifiable question.  Similar wage statement claims

27  have been certified.  *See, e.g.*, *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 374

28  (C.D. Cal. 2009) ("Accordingly, particularly in light of the fact that the pay stubs and

settlement summaries provided to California drivers are standardized documents, the
Court finds that Plaintiffs have demonstrated that certification of their pay stub claim is
appropriate."); *Espinoza v. Domino's Pizza, LLC*, 2009 U.S. Dist. LEXIS 31093 (C.D.
Cal. Feb. 18, 2009) (certifying wage statement subclass); *Jaimez*, 181 Cal. App. 4th at
1306 (reversing and ordering certification of meal period, rest period, and wage
statement subclasses).

## 5. Plaintiff Will Adequately Represent the Interests of the Proposed Settlement Class

The final Rule 23(a) requirement asks whether "the representative parties will
fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This
requirement is satisfied if: (1) the proposed representative plaintiffs do not have conflicts
of interest with the proposed class, and (2) plaintiffs are represented by qualified and
competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The Rule 23(a) adequacy requirement is met here as Plaintiff has and will
represent putative Class Members with a focus and zeal true to the fiduciary obligation
that he has undertaken. Plaintiff's Counsel also satisfies the Rule 23(a)(4) adequacy-of-
counsel requirement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)
("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of
the class?"). The attorneys at Capstone have successfully certified numerous class
actions by way of contested motion in state and federal court, and have negotiated
settlements totaling over 100 million dollars on behalf of hundreds of thousands of Class
Members. (*See* Perez Decl. ¶¶ 8-11, Ex. 2.)

## 6. Class Settlement Is Superior to Other Available Means of Resolution

Resolving all Class Members' claims through a single class action is superior to a
series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no
advantage in individual members controlling the prosecution of separate actions. There
would be less litigation or settlement leverage, significantly reduced resources and no

greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrates the advantages of a collective bargaining and resolution process.

Addressing the allegations through a class action is superior to individual litigation or any alternative methods that may exist. This action was filed precisely because Plaintiff believed those alternatives, such as filing complaints with the LWDA, would have proven ineffective in addressing the problem on a class-wide basis. Additionally, although the value of the claims is not insignificant, the amount in controversy is not nearly enough to incentivize individual action. *See Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification."). As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement Class proposed by the Parties is appropriate.

C.    **The Proposed Class Action Settlement Should Receive Preliminary Approval**

1.    **The Court's Scrutiny of the Proposed Settlement Is Lowered At the Preliminary Approval Stage**

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps:

1.    Preliminary approval of the proposed settlement;

2.    Notice to the class providing them an opportunity to exclude themselves; and

3.    A final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

At the preliminary approval stage, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See*, *generally*, 3 Conte & Newberg, *Newberg on Class Actions*, section 7.20 (4th ed. 2002) § 11.25. For preliminary approval, scrutiny of the settlement is reduced. *In re Nat'l Football League Players' Concussion Injury Litig*., 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered.").

The Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. Newberg, § 11:25. Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *Ruch v. AM Retail Group, Inc*., 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware,* 484. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

In evaluating the fairness of a settlement, the Court should be guided by the judicial policy favoring settlement of class action suits. *See Churchill Village, LLC v. Gen. Elec*., 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). As this Circuit has observed, "settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

**2.      The Proposed Class Action Settlement Is Procedurally Fair, Adequate, and Reasonable**

**(a)      The Settlement Is The Product of Arms'-Length Negotiations And Is Therefore Entitled to a Presumption of Fairness**

In evaluating the Settlement for preliminary approval, the Court "first considers 'the means by which the parties arrived at settlement.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.* ("*Volkswagen*"), 2016 WL 4010049, *14 (N.D. Cal. July 26, 2016). "Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *Id.*

Here, the Parties participated in mediation with the Hon. Michael D. Marcus (Ret.), a respected mediator of wage and hour class actions. Judge Marcus helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. A mediator's participation weighs considerably against any inference of a collusive settlement. *See In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.")  At all times, the Parties' negotiations were adversarial and non-collusive.

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiff is represented by Capstone. Capstone employs seasoned class action attorneys who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (*See* Perez Decl. ¶¶ 8-11, Ex. 2.)  Defendants are represented by Littler Mendelson P.C., which operates a respected wage and hour defense practice.

As this Settlement is the "result of arms'-length negotiations by experienced class counsel, [it is] entitled to 'an initial presumption of fairness.'" *Volkswage*n, 2016 WL

4010049, at *14 (internal citation omitted).

**(b)    There Are No Obvious Deficiencies With the Settlement Or Preferential Treatment of Certain Class Members**

The Court must also ask whether "the Settlement contains any obvious deficiencies" and "whether the Settlement provides preferential treatment to any Class Member." *Volkswagen*, 2016 WL 4010049, at **14, 16. This Settlement contains no "glaring deficiencies" *Id*. at *14. The Settlement does not provide for a reversion of unpaid settlement funds to Defendant or distribute a disproportionate share of the settlement to the attorneys that requires closer scrutiny in the Ninth Circuit. *See id*. at *14-15 (applying the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011)).

Moreover, no segment of the Class is given preferential treatment, as the amount in settlement payment depends simply on the number of weeks worked by each Class Member during the Class Period. Plaintiff will seek at a later time (when the Motion for Attorneys' Fees is filed), an incentive award in an amount that is well within the range of such awards in the Ninth Circuit for their work on the behalf of the Class, the reputation risk undertaken, and for the execution of a general release. *See*, *e.g*., *La Fleur v. Medical Management Intern, Inc*., No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff for services to the Class, reputational harm and general release). Accordingly, the Settlement is procedurally fair, adequate and reasonable.

**(c)    The Parties Conducted a Thorough Investigation of the Factual and Legal Issues**

The Settlement is the product of informed negotiations following extensive investigation by Plaintiff's Counsel. During this matter's pendency, the Parties thoroughly investigated and researched the claims in controversy, their defenses, and the developing body of law. The investigation entailed the exchange of information pursuant to formal and informal discovery methods, including interrogatories and document

requests. In response to this discovery, Plaintiff received and analyzed hundreds of pages of documents, including Defendants' written policies regarding the claims at issue, and a representative sample of employee time and punch records.

Overall, Plaintiff's Counsel performed an exhaustive investigation into the claims at issue, which included:  (1) determining Plaintiff's suitability as a putative class representative through interviews, background investigations, and analyses of his employment files and related records; (2) evaluating all of Plaintiff's potential claims; (3) researching similar wage and hour class actions as to the claims brought, the nature of the positions, and the type of employer; (4) analyzing Defendants' labor policies and practices; (5) researching settlements in similar cases; (6) conducting a discounted valuation analysis of claims; (7) drafting the mediation brief; (8) participating in mediation; and (9) finalizing the Settlement Agreement. The extensive document and data exchanges have allowed Plaintiff's Counsel to appreciate the strengths and weaknesses of the claims alleged against Defendants and the benefits of the proposed Settlement. (Perez Decl. ¶ 7.)

### 3.    The Proposed Settlement Is Substantively Within the Range of Reasonableness

To determine whether a settlement should be preliminarily approved, the Court should also evaluate whether it "falls within the range of possible approval." *Volkswagen*, 2016 WL 4010049, at \*16. In assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted). There is "no single formula" to be applied, but the Court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery. *Rodriguez v. West Pub. Corp*., 563 F.3d 948, 965 (9th Cir. 2009).

While Plaintiff is confident that he has strong claims, he also recognizes that if the litigation had continued, he may have encountered legal and factual hurdles that could

have prevented the Class from obtaining any recovery. For example, although a number

of cases have found wage and hours actions to be especially amenable to class

resolution,[4] several have gone the other way, finding that some of the very claims at

issue here were not suitable for class adjudication because they raised too many

individualized issues.[5] Some courts have denied certification even when an employer's

policies are unlawful on their face. For instance, in *Ordonez v. Radio Shack, Inc.*, 2013

U.S. Dist. LEXIS 7868, *35-41 (C.D. Cal. Jan. 17, 2013), the court denied certification

even though the plaintiff submitted evidence of a facially unlawful policy regarding rest

breaks. The *Ordonez* court concluded that the predominance and superiority elements

were not met based on the employer's presentation of anecdotal evidence of lawful

---

[4] *See Brinker*, 53 Cal. 4th at 1033 ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment . . . The theory of liability – that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law - is by its nature a common question eminently suited for class treatment."). Litigation of wage and hour claims on class-wide bases (1) encourages the vigorous enforcement of wage laws (*Smith v. Super. Ct.*, 39 Cal. 4th 77, 82 (2006)); (2) "eliminates the possibility of repetitious litigation" (*Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th at 340); (3) affords small claimants a method of obtaining redress (*id.*); (4) "deter[s] and redress[es] alleged wrongdoing" (*Jaimez*, 181 Cal. App. 4th at 1298); (5) "avoid[s] windfalls to defendants" (*Brinker*, 53 Cal. 4th at 1054); (6) avoids "inconsistent or varying adjudications" (*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121, 129 (2006)); and (7) alleviates the concerns of employees about retaliation (*Gentry v. Super. Ct.*, 42 Cal. 4th 443, 462-63 (2007). These policies are so strongly favored that "class certifications should not be denied [in wage and hour cases] so long as the absent class members' rights are adequately protected." *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462, 474 (1981).

[5] *See Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (denying certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist. LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

1   compliance notwithstanding the unlawful policy. *Id*. at *38-40. Other courts have

2   denied class certification by establishing a high evidentiary threshold for plaintiffs to

3   support a theory of classwide uniform practice. *See Cruz v. Sun World Int'l, LLC*, 243

4   Cal. App. 4th 367, 391, 197 Cal. Rptr. 3d 172, 192 (2015). Further, Defendants contend

5   that it at all times acted properly under the law and that it would vigorously defend

6   against class certification and the merits of this case.

7          Given the discretion accorded to the district court, even a relatively strong case on

8   the merits may not satisfy the standards for certification on a contested motion. This

9   reality added to the risk of continued litigation and militated in favor of settlement.

10  Indeed, it is usually preferable to reach an early resolution of a dispute because such

11  resolutions save time and money that would otherwise go to litigation. For example, if

12  this action had settled following additional litigation, the settlement amount would likely

13  have taken into account the additional costs incurred, and there may have been less

14  available for Class Members.

15         Moreover, if the Court had denied Plaintiff's motion for class certification,

16  Defendants would have likely offered *no* money to settle the class-wide claims. As a

17  general matter, the value of class claims is largely dependent on the size of a putative

18  class. Prior to certification, there is no actual class, only a prospective class. The value

19  of the claims asserted on their behalf is estimated by calculating the maximum damages

20  in the aggregate based on the available evidence and then discounting by the chances of

21  the court denying certification, the chances of losing at trial, and the chances of winning

22  at trial but losing on appeal. But if the court denies certification, then there is no class,

23  and to the extent any value remains in the case, it derives almost entirely from the value

24  of a plaintiff's individual claims.

25         In summary, although Plaintiff and his counsel maintained a strong belief in the

26  underlying merits of the claims, they also acknowledge the significant challenges posed

27  by continued litigation through certification and/or at trial. Accordingly, when balanced

28  against the risk and expense of continued litigation, the settlement is fair, adequate, and

reasonable. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

## D. The Court Should Preliminarily Approve the Negotiated Class Representative Enhancement Payment

The Settlement provides for a Class Representative Enhancement Payment of $10,000[6] to James Mortley for his service on behalf of the Settlement Class and for agreeing to a broader release than those required of other Class Members. "Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (describing the service award as an incentive to the class representatives); *Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award should be in such an amount "as may be necessary to induce [the class representative] to participate in the suit").

Plaintiff will file a formal motion for the negotiated Class Representative Enhancement Payment once preliminary approval of the Settlement is granted.

---

[6] The amount of the requested incentive award is also reasonable by reference to the amounts that district courts in this Circuit have repeatedly found to be reasonable for wage and hour class action settlements. *See, e.g.*, *Bernal v. Davita, Inc.*, Case No. 5:12-cv-03255-PSG, *2 (N.D. Cal, Jan. 14, 2014) ($10,000 incentive payment in $3.4 million wage-and-hour class settlement); *York v. Starbucks Corp.*, No. 08-07919 GAF, Dkt. No. 239, at *4 (C.D. Cal. Oct. 29, 2013) (approving enhancement award of $10,000 in a $3 million wage-and-hour class settlement); *Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) (approving enhancement awards of $20,000 each to four class representatives in a $3.5 million settlement of an employment class action); *Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119, **34-37 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 award); *Amochaev v. Citigroup Global Markets, Inc.*, No. 05-1298 PJH (N.D. Cal. Aug. 13, 2008) (approving enhancement awards of $50,000 and $35,000 to employees in light of factors that included fear of workplace retaliation).

**E.    The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs**

Under California law,[7] the common fund method for awarding attorneys' fees is appropriate where, as here, attorneys have been instrumental in creating a settlement fund that benefits all class members. *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that when attorneys create a common fund that benefits a class, the attorneys have an equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results oriented rather than process-oriented, it better approximates the workings of the marketplace' than the lodestar approach." [citation omitted]). Although California has no benchmark, California courts routinely award attorneys' fees equalling approximately one-third of the common fund's total potential value or higher.[8]  *See, e.g., Laffitte v.*

---

[7] In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Because CAFA operates to modify the diversity requirement, "the *Erie* doctrine still applies so that state substantive law governs such claims in federal court." *See* Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California & 9th Cir. Editions (The Rutter Group, 2015) paragraph 10:497.5. As the Ninth Circuit observed, "even after CAFA's enactment, *Erie*-related doctrines ensure that, for the most part, removal of a CAFA case from state to federal court produces a change of courtrooms and procedure rather than a change of substantive law." *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).

[8] The amounts of the requested incentive awards are also reasonable by reference to the amounts that district courts in this Circuit  have repeatedly found to be reasonable for wage and hour class action settlements. *See also, Albrecht v. Rite Aid Corp.*, No. 729219 (San Diego Super. Ct.) (35% award); *Weber v. Einstein Noah Restaurant Group, Inc.*, No. 37-2008-00077680 (San Diego Super. Ct.) (40% award); *Kenemixay v. Nordstroms, Inc.*, No. BC318850 (L.A. Super. Ct.) (50% award); *Leal v. Wyndham Worldwide Corp.*, No. 37-2009-00084708 (San Diego Super. Ct.) (38% award); *Gomez and LaGaisse v. 20 20 Communications*, No. RIC 528973 (Riverside Super. Ct.) (33% award); *Acheson v. Express LLC*, No. 109CV135335 (Santa Clara Super. Ct.) (33% award); *Chin v. Countrywide Home Loans, Inc.*, No.: 39-2010-00252741-CU-OE-STK (San Joaquin Super. Ct.) (30% award); *Ethridge v. Universal Health Servs.*, No. BC391958 (L.A. Super. Ct.) (33% award); *Magee v. Am. Residential Servs. LLC*, No. BC423798 (L.A. Super. Ct.) (33% award); *Blue v. Coldwell Banker Residential*

1   *Robert Half Int'l*, 1 Cal. 5th 480 (2016) (affirming a fee award representing one-third of

2   the common fund); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008)

3   ("[S]tudies show that . . . fee awards in class actions average around one-third of the

4   recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An*

5   *Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35

6   (independent studies of class action litigation nationwide have come to a similar

7   conclusion that a one-third fee is consistent with market rates).

8   　　　　Plaintiff will file a formal motion for the negotiated attorneys' fees and costs once

9   preliminary approval of the Settlement is granted.

10   **F.　　The Proposed Class Notice Adequately Informs Class Members**

11   **　　　About The Case And Proposed Settlement**

12   　　　　The proposed class settlement notice and claims administration procedure satisfy

13   due process. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to

14   direct the litigants to provide Class Members with the "best notice practicable" under the

15   circumstances, including "individual notice to all members who can be identified

16   through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173, 94 S. Ct.

17   2140, 2150, 40 L. Ed. 2d 732, 746 (1974). Under Rule 23(c)(2), notice by mail provides

18   such "individual notice to all members." *Id.* Where the names and addresses of Class

19

20   *Brokerage Co.*, No. BC417335 (L.A. Super. Ct.) (33% award); *Silva v. Catholic Mortuary Servs., Inc.*, No. BC408054 (L.A. Super. Ct.) (33% award); *Mares v. BFS*

21   *Retail & Comm. Operations LLC*, No. BC375967 (L.A. Super. Ct.) (33% award); *Blair et al. v. Jo-Ann Stores, Inc.*, No. BC394795 (L.A. Super. Ct.) (33% award); *Perez and*

22   *Comeaux v. Standard Concrete*, No. 30-2008-00211820 (Orange County Super. Ct.) (33% award); *Ward v. Doyon Sec. Servs., LLC*, No. BS 900051̄7 (San Bernardino Super.

23   Ct.) (33% award); *Barrett v. The St. John Companies*, No. BC354278 (L.A. Super. Ct.) (33% award); *Clymer and Benton v. Candle Acquisition Co.*, No. BC328765 (L.A.

24   Super. Ct.) (33% award); *Dunlap v. Bank of America, N.A.*, No. BC328934 (L.A. Super Ct.) (33% award); *Taylor v. Ross Stores, Inc.*, No. RCV 065453, JCCP 4331 (San

25   Bernardino Super. Ct.) (33% award); *Case et al. v. Toyohara America Inc.*, No. BC328111 (L.A. Super. Ct.) (33% award); *Sunio v. Marsh USA, Inc.*, No. BC328782

26   (L.A. Super Ct.) (33% award); *Chalmers v. Elecs. Boutique*, No. BC306571 (L.A. Super. Ct.) (33% award); *Boncore v. Four Points Hotel ITT Sheraton*, No. GIC807456

27   (San Diego Super. Ct.) (33% award); *Vivens v. Wackenhut Corp.*, No. BC290071 (L.A. Super. Ct.) (31% award); *Crandall v. U-Haul Int'l., Inc.*, No. BC178775 (L.A. Super.

28   Ct.) (40% award).

1   Members are easily ascertainable, individual notice through the mail constitutes the "best

2   notice practicable." *Id.* at 175.

3        The Notice of Class Action Settlement ("Class Notice") was jointly drafted and

4   approved by the Parties and provides Settlement Class Members with all required

5   information so that each member may make an informed decision regarding his or her

6   participation in the Settlement. The Class Notice provides information regarding the

7   nature of the lawsuit; a summary of the substance of the settlement terms; the class

8   definition; the deadlines by which Class Members must submit Request for Exclusions

9   or objections; the date for the final approval hearing; the formula used to calculate

10  settlement payments; a statement that the Court has preliminarily approved the

11  settlement; a statement that Class Members will release the settled claims unless they opt

12  out; and noticed of pending lawsuits with overlapping claims. Accordingly, the Notice

13  satisfies the requirements of Rule 23(c)(2).

14       The Class Notice summarizes the proceedings and the terms and conditions of the

15  Settlement in an informative and coherent manner, complying with the statement in

16  *Manual for Complex Litigation*, *supra*, that "the notice should be accurate, objective,

17  and understandable to Class Members . . . ." *Manual for Complex Litigation*, Third (Fed.

18  Judicial Center 1995) ("Manual") § 30.211.  The Notice Packet states that the Settlement

19  does not constitute an admission of liability by Defendants, and that Final Approval has

20  yet to be made. The Notice Packet thus complies with the standards of fairness,

21  completeness, and neutrality required of a settlement class notice disseminated under

22  authority of the Court. Rule 23(c)(2)and (e); *Manual* §§ 8.21, 8.39; *Manual* §§ 30.211,

23  30.212.

24       The Settlement Administrator will mail the Class Notice to all Settlement Class

25  Members via first class United States mail. (Settlement Agreement ¶ 42.)  In the event

26  Notice Packets are returned as undeliverable, the Settlement Administrator will attempt

27  to locate a current address using, among other resources, a computer/SSN and "skip

28  trace" search to obtain an updated address. (*Id.* at ¶ 43.)  This method was negotiated by

the Parties to maximize the Class Member notification rate while ensuring cost effective administration of the Settlement.

## IV.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims. Having appropriately presented the materials and information necessary for preliminarily approval, the Parties request that the Court preliminarily approve the settlement.


Dated:  August 30, 2018                    Respectfully submitted,

                                           CAPSTONE LAW APC

                                           By: /s/ Raul Perez
                                           Raul Perez
                                           Arnab Banerjee
                                           Brandon Brouillette
                                           Ruhandy Glezakos

                                           Attorneys for Plaintiff James Mortley

Firmwide:156768447.1 095788.1001

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT